# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| DONALD R. EARL, | Case No. EDCV 18-00217-AS |
| Plaintiff, | **MEMORANDUM OPINION AND** |
| v. | **ORDER OF REMAND** |
| ANDREW M. SAUL, Commissioner of the Social Security Administration,[1] | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Nancy A. Berryhill in this case. See Fed.R.Civ.P. 25(d).

**PROCEEDINGS**

On January 30, 2018, Plaintiff filed a Complaint seeking review of the denial of his application for Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11-12, 17, 28). On May 21, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 14-15). On December 13, 2018, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 23). The matter was transferred to the undersigned Magistrate Judge on November 14, 2019. (Docket Entry No. 27).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On February 6, 2014, Plaintiff, formerly employed as a construction worker (see AR 118, 397), filed an application for Supplemental Security Income, alleging a disability since January 1, 2013. (See AR 93-99).[2] Plaintiff's application was denied initially on July 25, 2014 and on reconsideration on February 19, 2015. (See AR 31-34, 36-40).

On February 16, 2017, the Administrative Law Judge ("ALJ"), Troy Silva, heard testimony from Plaintiff (represented by counsel) and

---

[2] The ALJ mistakenly stated, at the hearing and in the Decision, that the application date was February 19, 2014. (See AR 15, 17, 23, 387).

2

vocational expert ("VE") Kristan Cicero. (See AR 385-403). On April 18, 2017, the ALJ issued a decision denying Plaintiff's application. (See AR 15-23). Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 19, 2014. (AR 17). At step two, the ALJ determined that Plaintiff had the following severe impairments -- "degenerative disc disease of the cervical spine, deep vein thrombosis of the left lower extremity, lumbar sprain, seizure disorder, and obstructive sleep apnea." (AR 17-18).[3] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. (AR 18).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[4] and concluded that Plaintiff could perform light work[5] with the following limitations:

---

[3] The ALJ determined that Plaintiff's other impairments -- carpal tunnel syndrome and hearing deficits -- were nonsevere. (AR 17-18).

[4] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

3

> [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; within those weight limitations, occasionally push and pull with the left upper extremity, and frequently push and pull with the right upper extremity; occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasional overhead reaching with the dominant left upper extremity and frequent overhead reaching with the right upper extremity; frequent fine and gross manipulation bilaterally; avoid moderate exposure to extreme cold and vibration; avoid concentrated exposure to extreme heat and respiratory irritants such as dusts and fumes; avoid hazards and dangerous moving machinery; and cannot do work around open bodies of water and must observe seizure precautions.

(AR 26-29).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (AR 21). At step five, the ALJ determined, based on Plaintiff's age, education, experience, RFC, and the VE's testimony, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (AR 22), and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 23).

The Appeals Council denied Plaintiff's request for review on December 21, 2017. (See AR 3-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383©.

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See

4

Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is "more than a mere scintilla, but less than a preponderance[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014)(citation omitted). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion[.]" Id. at 1009-10 (citations and quotation marks omitted). As a result, "[w]here the evidence can support either affirming or reversing [the ALJ's] decision, [a court] may not substitute [its] judgment for that of the [ALJ]." Id. at 1010 (citation omitted).[6]

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in failing to provide proper reasons for rejecting Plaintiff's testimony. (See Joint Stip. at 4-13).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's claim of error warrants a remand for further consideration.

//
//

---

[6] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

5

**A.  The ALJ Failed to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Symptom Testimony**

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony about his symptoms and limitations. (See Joint Stip. at 4-13). Defendant asserts that the ALJ provided specific and permissible reasons for finding Plaintiff not fully credible. (See Joint Stip. at 13-16).

1. Legal Standard

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Id., (citing Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original)(citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Id. (citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of

malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[1] SSR 16-3p eliminated the term "credibility" from the Agency's sub-regulatory policy. However, the Ninth Circuit Court of Appeals has noted that SSR 16–3p:

> makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be

---

[1] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's December 21, 2017 denial of Plaintiff's request for review. 20 C.F.R. § 416.929, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

> expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p)(alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, supra. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009)(citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)(citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015)

("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 2. Plaintiff's Subjective Statements and Testimony

Plaintiff made the following statements in a Disability Report - Appeal dated August 5, 2014: two large masses were found in his testicles and one 8 mm mass was found on his spine; the pain in his back gets worse every day; the loss of bowel control makes it hard for him to leave the house; he has difficulty standing, so he is unable to cook or do anything which requires him to stand for more than a couple of minutes; he sometimes needs help getting up because of the pain; he is not able to drive due to the increase frequency of seizures; and he has lost more hearing. (AR 127, 131-32).

Plaintiff made the following statements in a Seizure Questionnaire dated September 13, 2014: he has been having seizures for approximately 3 years, varying from 1 seizure a day to up to 5 or 6 seizures a day; his seizures cause him to lose consciousness, have convulsions, bite his tongue and lose bladder control; his seizures last approximately 2 to 15

minutes; and after a seizure, he feels tired, drained and confused, and it takes him one hour to one day to resume normal activities. (AR 124).

Plaintiff made the following statements in a Disability Report - Appeal dated February 15, 2015: his myoclonic epilepsy and spinal stenosis are getting worse; the pain increases every day and makes it more difficult to stand and sit; he is unable to drive (he lose his driving privileges because his doctor reported his seizures to the DMV); he is unable to stand for any length of time; and he feels pain in his back when doing "even the smallest activity". (AR 135, 139-40).

Plaintiff gave the following testimony at the administrative hearing (see AR 386-97):

>     He lives with his wife. He completed twelfth grade. His wife does the household chores, including grocery shopping, and his wife drives. He is unable to drive because his license was pulled last year as a result of his medications. (AR 389-90, 396).
>
>     Since he applied for benefits, he has had problems with his neck and back, such as shooting pains, numbness and cramping. He has worn a back brace for 4 years, and he wore a back brace to the hearing. He was going to have surgery, but he was told that he first needed to have epidurals and go through pain management. The epidurals helped initially, but now they help for about a week and the pain that follows is worse. The treatments have not solved his symptoms. (AR 388-89, 391).
>
>     Since he applied for benefits, he has had problems with his arms, such as numbness, tingling, and twitching. Pain in his arms is caused by any movement that strains his lower back or legs, including brushing his teeth and raising and bending his arms. He cannot write well because of lack of hand control. He cannot type because of movement in his hands, but he is able to play on a computer by rolling his hand on the mouse. He has problems with gripping, grabbing and hanging onto things. He is unable to open a tight lid because of the

twisting; somebody else needs to break the lid. (AR 393-94).

He has a seizure disorder. He has seizures "[a]nywhere from one to five to six [times] a week it could be," based on what his wife tells him. The medications do and do not control his seizures. He does not really know when he has seizures. He often has seizures when he is sleeping, and then he will wake up with a black eye or a bloody nose. (AR 390-91).

He has had pain in his groin area for two years. He has had two surgeries, but he still has problems, such as numbness, stinging and sometimes the inability to use the bathroom. His groin pain is caused by walking, sitting too much, and wearing Levis (his doctor told him to wear boxers or nothing at all). (AR 394-95).

He has sleep apnea, and uses a CPAP every night (which helps him get REM sleep). He still has sleep issues, such as seizures, and sleeps maybe 2 hours a night, which causes him to be fatigued, tired, forgetful and unfocused. (AR 395-96).

He sometimes has difficulty walking, particularly if he is up for a long period of time. He can stand or walk for 15 to 20 minutes before he gets numbness in his legs, a stabbing feeling in his lower back, and cramping. He relieves the symptoms by laying down, taking more medication, trying to get comfortable, and propping up his head. He can sit for 15 to 20 minutes "if [he] push[es] it" before he gets stabbing, numbness and tingling. He relieves the symptoms by laying down, propping up his legs, and maybe taking more medication. At the hearing he was sitting leaning to the right; he has been doing that for a couple of years. He is able to lift 5 to 10 pounds; if he tries to lift more than that weight he drops what he is lifting and gets shooting pains through his spine, legs and arms (resulting in him being unable to move for a couple of days). (AR 389, 391-).

He has not been able to work since he had a motorcycle accident in 2007, in which he injured his neck and back. He earned $17,000 in 2006 (he did a residential construction job in which he had to lift up to 50 pounds), but did not earn much money before then, due to bad luck and to spending time in jail for convictions on weapons charges and possession of stolen property. (AR 386-87, 391, 397).

//

//

//

### 3. The ALJ's Credibility Findings

Prior to discussing the medical evidence in the record, and without discussing most of Plaintiff's testimony, the ALJ stated: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR 19).

After discussing the medical evidence in the record, including the opinions of the consultative examiner and the State Agency medical consultants (see AR 19-21), the ALJ addressed Plaintiff's testimony as follows:

> I considered the claimant's statements and find they do not entirely support his disability allegations. The claimant alleges his spine condition is disabling, but Dr. Puri noted the claimant is not a surgical candidate. Thus, the claimant has been treated conservatively for his neck and back pain ([AR 363-77]). Physical examinations reveal mild findings of tenderness, decreased range of motion at times, and positive straight leg raising at times ([AR 148-61, 220-24, 344-62]).

During the hearing, the claimant appeared unable to sit comfortably and he leaned to the right. Yet, at the orthopedic evaluation with Dr. Hoang, the claimant sat comfortably on a chair and was able to get on and off the examining table without difficulty ([AR 222]). The claimant was diagnosed with muscular dystrophy ([AR 348]). The claimant has been prescribed a back brace and CPAP, however, treatment has focused on pain management rather than range of motion and stretching exercises, low-impact aerobic exercise, and mobility aids. In the seizure questionnaire, the claimant reported having one to six seizures per day, and at the hearing, the claimant testified he has one to six seizures per week, which he said his wife witnessed when he slept ([AR 124, 390-91]). Yet there has been little documentation of the seizure activity and little change in his seizure medications, and he has not been to the emergency room recently for seizures ([AR 125, 363-77]). The claimant also attributes his seizure activity to poorly controlled obstructive sleep apnea, though the claimant has needed to be reeducated about proper CPAP usage and cleaning and maintenance of equipment, and he continues to smoke 21 to 30 cigarettes a day ([AR 319-29]).

In sum, the above residual functional capacity assessment is supported by the evidence as a whole. Although the claimant's alleged symptoms and limitations are not entirely supported by the objective medical evidence, I have considered them.

(AR 21).

   4.   <u>Analysis</u>

As set forth below, the ALJ failed to provide clear and convincing reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of his pain and symptoms.

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" <u>Parra v. Astrue</u>, 481 F.3d 742, 750 (9th Cir. 2007)(quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ did not properly discredit Plaintiff's testimony based on the determination that Plaintiff had obtained only conservative treatment for his back and neck conditions. <u>See</u> <u>Childress v. Colvin</u>, 2014 WL 4629593, *12 (N.D. Cal. Sept. 16, 2014)("There is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment."); <u>Boitnott v. Colvin</u>, 2016 WL 362348, *4 (S.D. Cal. January 29, 2016)(explaining that "[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative' treatment of [the plaintiff's] conditions," and that the ALJ "was not qualified to draw his own inference regarding whether more aggressive courses of treatments were available for Plaintiff's conditions").

14

Contrary to the ALJ's implied assertion, Rajiv Puri, M.D., an orthopedic surgeon, did not state that Plaintiff was not going to need spinal surgery. (See AR 341 [Dr. Puri's Report dated September 14, 2015, stated: "In view of disproportion changes on the x-rays and MRI films, and EMG studies, [Plaintiff] is now referred to the pain specialist for long-term pain management and for trial of cervical epidural and lumbar epidural injections. No indication for surgery at present. He will next come back here only if necessary in the future."]; see also AR 388 [Plaintiff's hearing testimony: "They won't do surgery. They [were] going to do surgery and they told me they wanted me to go through pain management again and do epidurals and that's basically what I've been doing."]).

Since the record does not reflect the appropriateness or availability of more aggressive treatment options, it is not clear that the treatments Plaintiff received for his back and neck impairments were conservative. See Lapeirre-Gutt v. Astrue, 382 Fed.Appx. 662, 664 (9th Cir. 2010)("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."). For Plaintiff's spinal condition, he received a transforaminal epidural steroid injection at L5-S1 (AR 374 [Operative Report dated October 21, 2016], 346 [Medical Summary Report dated November 25, 2016, stating that Plaintiff has been receiving a monthly epidural injection at the pain management clinic]), a doctor recommended he receive transforaminal epidural steroid injections at L4-L5 and and L5-S1 (AR 376 [Report following February 13, 2017 visit]), he was prescribed a back brace (AR

362 [Note dated October 22, 2014]), and he was prescribed Norco and MS Contin (AR 366 [December 19, 2016], 376 [February 13, 2017]). See LaPeirre, supra (treatment consisting of copious amounts of narcotics, occipital nerve blocks, and trigger point injections not conservative); Hydat Yang v. Colvin, 2015 WL 2480546, *6 (C.D. Cal. Jan. 20, 2015)("This court has previously found that spinal epidural injections are not 'conservative' treatment."); Christie v. Astrue, 2011 WL 4368189, *4 (C.D. Cal. Sept. 16, 2011)("narcotic pain medication, steroid injections, trigger point injections, epidural shots, and cervical traction . . . are certainly not what the Court would categorize as conservative.").

Third, the ALJ's observation of Plaintiff at the 31-minute hearing (see AR 21 ["During the hearing, the claimant appeared unable to sit comfortably and he leaned to the right."]) was not a proper reason to discount Plaintiff's testimony. See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985)(condemning an ALJ's reliance of a claimant at a hearing as "'sit and squirm' jurisprudence"). Contrary to the ALJ's assertion, Plaintiff's ability (or lack of ability) to sit comfortably at the February 16, 2017 hearing was not inconsistent with Plaintiff's ability to sit comfortably almost two years earlier at the June 24, 2014 consultative examination (see AR 222). Indeed, there is no indication as to how long Plaintiff sat at the June 24, 2014 consultation.

Fourth, to the extent that the ALJ discounted Plaintiff's testimony based on inconsistencies in Plaintiff's testimony regarding the number

of seizures he suffered, such reason was not clear and convincing. Plaintiff's statement in the September 13, 2014 Seizure Questionnaire about how often he had seizures (AR 124 ["It varies - 1 a day up to 5-6 a day") and Plaintiff's testimony at the February 16, 2017 hearing about how often he was having seizures (AR 390 ["Anywhere from one to five or six [times] [a] week it could be]), was not inconsistent, given Plaintiff's testimony, at the hearing, that his knowledge of the number of seizures he was having per week was based on what his wife told him. (AR 390-91).

Fifth, while the ALJ also found there was a lack of objective medical evidence supporting Plaintiff's testimony concerning his symptoms and limitations, this factor cannot, by itself, support an adverse finding about Plaintiff's testimony. See Trevizo, 871 F.3d at 679 (once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'")(quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)); see also SSR 16-3p, 2017 WL 5180304, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. . . . However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the the ALJ did not discount Plaintiff's symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. Cf. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the

record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell, 775 F.3d at 1141 (citations omitted).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 9, 2020

/s/<br>ALKA SAGAR<br>UNITED STATES MAGISTRATE JUDGE